******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROBERT MCMILLION *v.* COMMISSIONER
OF CORRECTION
(AC 35308)

DiPentima, C. J., and Alvord and Keller, Js.

*Argued April 23—officially released August 5, 2014*

(Appeal from Superior Court, judicial district of
Tolland, Solomon, J. [motion to consolidate]; Cobb,
J. [judgment].)

*Michael Zariphes*, assigned counsel, for the appel-
lant (petitioner).

*Rocco A. Chiarenza*, assistant state's attorney, with
whom, on the brief, were *David I. Cohen*, state's attor-
ney, and *James M. Bernardi*, supervisory assistant
state's attorney, for the appellee (respondent).

*Opinion*

KELLER, J. The petitioner, Robert McMillion, appeals from the judgment of the habeas court denying his second amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court abused its discretion in denying his petition for certification to appeal and argues that the habeas court improperly (1) granted the motion to dismiss brought by the respondent, the Commissioner of Correction, for the petitioner's failure to make a prima facie case pursuant to Practice Book § 15-8[1] on his claim that his trial counsel rendered ineffective assistance by failing to advise him adequately with regard to a pretrial plea offer, and (2) failed to find that his trial counsel had rendered ineffective assistance by failing to advise him adequately with regard to the pretrial plea offer. We conclude that the habeas court abused its discretion in denying certification to appeal and that the habeas court improperly granted the respondent's motion to dismiss. Accordingly, we reverse the judgment and remand the case to the habeas court for a new trial on the petitioner's claim that his trial counsel rendered ineffective assistance when advising him as to whether to accept or to reject the plea offer.

The following facts and procedural history are relevant to our resolution of the petitioner's claims. On September 16, 2007, the petitioner struck the victim, Ivan Flores, in the head multiple times with a baseball bat.[2] The state charged the petitioner with the crime of assault in the first degree in violation of General Statutes § 53a-59 (a) (1). On June 1, 2009, a jury found the petitioner guilty of assault in the first degree, and the trial court sentenced him to eight years of incarceration followed by five years of special parole with special conditions. This court affirmed his conviction on direct appeal. *State* v. *McMillion*, 128 Conn. App. 836, 17 A.3d 1165, cert. denied, 302 Conn. 903, 23 A.3d 1243 (2011). Thereafter, the petitioner filed the present habeas action in which he alleged that both his trial and appellate attorneys had rendered ineffective assistance.[3]

On May 3, 2012, the petitioner filed the operative second amended petition for a writ of habeas corpus in which he alleged that his trial counsel, Attorney Jon Imhoff, rendered ineffective assistance by failing: (1) to call certain witnesses for the defense; (2) to investigate the evidence and/or the state's witnesses adequately prior to trial; (3) to advise the petitioner properly regarding the state's pretrial plea offer; (4) to procure the petitioner's medical records and present them as mitigating evidence; and (5) to procure an expert witness to testify concerning the petitioner's medical condition in order to mitigate his culpability. The respondent filed an answer and denied the petitioner's claims.

On November 6, 2012, the habeas court held a hearing at which the petitioner testified as the only witness on his behalf. As to the third claim of ineffective assistance of trial counsel regarding Imhoff's advice concerning the plea offer, the petitioner testified that he had been represented by Imhoff at the criminal trial and met with him on four occasions prior to trial. The petitioner claimed that, prior to trial, Imhoff conveyed to him a plea offer by the state that would require that he spend five years in prison.[4] He testified that when Imhoff conveyed the plea offer, "He told me . . . [t]he plea bargain was five years. He told me if I took it to trial, I would get five, mandatory. He never explained to me that if I was to take it to trial, that the five mandatory was the minimum, that I could get up to twenty years. He never explained that to me. He told me that it was [a] five [year] plea bargain, and if I was to go to trial, it would be five, mandatory, and I kept telling him, I said, Well, there's no mandatory sentence in the state of Connecticut for this charge.[5] He told me . . . Listen. I know. I'm the attorney here." On the basis of Imhoff's alleged explanation, the petitioner decided to reject the plea offer, concluding that he was not taking a risk by proceeding to trial because he would spend five years in prison regardless of whether he pleaded guilty or was convicted and sentenced after a trial. He indicated that Imhoff never advised him whether to accept or reject the five year offer. The petitioner stated that Imhoff did not explain until jury selection began that, by going to trial, he faced a five year mandatory minimum sentence and that his maximum exposure on the charge of first degree assault was twenty years in prison. At that point, the petitioner claimed, he asked Imhoff to determine if the plea offer "was still on the table." Upon inquiry, Imhoff advised him that the offer no longer was available. The petitioner testified that had he known a rejection of the plea offer exposed him to a maximum penalty of twenty years in prison if he was convicted after trial, he would have accepted the state's offer.

Following the petitioner's habeas testimony, he rested without calling any further witnesses. In addition, the transcripts of his underlying criminal jury trial, including the sentencing proceeding, and the decision in his direct appeal were, by agreement of the parties prior to the start of the trial, admitted as full exhibits. Prior to calling any witnesses, the respondent orally moved to dismiss the petition at the close of the petitioner's case.[6] The respondent argued that the petitioner failed to show any evidence of Imhoff's deficient performance. Specifically, the respondent argued that the only evidence presented was that the alleged five year plea offer had been made, and that the petitioner received an eight year sentence after rejecting the offer and was found guilty at trial. The respondent asserted that, given the posttrial result, a sentence of eight years incarceration followed by five years special parole, Imhoff had

a better assessment of the worth of the case in terms of an ultimate prison sentence than did the prosecutor, and that it was entirely reasonable for the petitioner to reject a five year plea offer in exchange for proceeding to trial and being exposed to an additional three years in prison at that time.

In response, the petitioner argued that his own testimony as to what Imhoff told him, along with his understanding of counsel's advice, demonstrated ineffective representation and established a prima facie case to survive the respondent's motion to dismiss. The petitioner acknowledged that "of course, the court can believe him or not believe him . . . but right now, as it stands," the petitioner's testimony was sufficient to prevent dismissal of his claim of ineffectiveness on the basis of the adequacy of counsel's advice concerning the pretrial plea offer.

"In *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction . . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense . . . . [A] successful petitioner must satisfy both prongs . . . [and the] failure to satisfy either . . . is fatal to a habeas petition." (Citation omitted; internal quotation marks omitted.) *Perez* v. *Commissioner of Correction*, 150 Conn. App. 371, 377–78, 90 A.3d 374 (2014). The habeas court, in entering a dismissal on the claim of counsel's ineffective assistance as to advice regarding the plea offer, relied on the recent United States Supreme Court decision in *Missouri* v. *Frye*, U.S. , 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012), as to the standard for establishing ineffective assistance in the context of a rejection of a pretrial plea offer. On the basis of that case, the habeas court ruled that the petitioner had failed to present a prima facie case that he was prejudiced by Imhoff's alleged deficient performance because he had not presented any evidence that the trial court would have accepted the terms of the plea offer had it been presented to that court. The habeas court then "directed [a] verdict"[7] against the petitioner on his claim that he was improperly advised on the plea offer.[8] The habeas court subsequently denied the petitioner certification to appeal and this appeal followed. Additional facts and procedural history will be set forth as necessary.

The petitioner claims that the habeas court abused its discretion in denying certification to appeal on the ground that the habeas court improperly dismissed his claim concerning ineffective assistance during the plea bargaining process due to its misinterpretation of the United States Supreme Court decision in *Frye*. The peti-

tioner maintains that, based upon a proper application of *Frye*, he presented sufficient evidence to survive a dismissal. We agree that the court's denial of certification to appeal constituted an abuse of discretion and that the court improperly dismissed the petitioner's case.

We begin by setting forth the applicable standard of review and procedural hurdles that a petitioner must surmount to obtain appellate review of the merits of a habeas court's denial of a habeas petition following denial of certification to appeal. "In *Simms* v. *Warden*, 229 Conn. 178, 187, 640 A.2d 601 (1994), [our Supreme Court] concluded that . . . [General Statutes] § 52-470 (b) prevents a reviewing court from hearing the merits of a habeas appeal following the denial of certification to appeal unless the petitioner establishes that the denial of certification constituted an abuse of discretion by the habeas court. In *Simms* v. *Warden*, 230 Conn. 608, 615–16, 646 A.2d 126 (1994), [our Supreme Court] incorporated the factors adopted by the United States Supreme Court in *Lozada* v. *Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991), as the appropriate standard for determining whether the habeas court abused its discretion in denying certification to appeal. This standard requires the petitioner to demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . A petitioner who establishes an abuse of discretion through one of the factors listed above must then demonstrate that the judgment of the habeas court should be reversed on its merits. . . . In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous." (Emphasis omitted; internal quotation marks omitted.) *Tutson* v. *Commissioner of Correction*, 144 Conn. App. 203, 214–15, 72 A.3d 1162, cert. denied, 310 Conn. 928, 78 A.3d 145 (2013).

"The conclusions reached by the trial court in its decision to dismiss [a] habeas petition are matters of law, subject to plenary review. . . . [When] the legal conclusions of the court are challenged, [the reviewing court] must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record." (Internal quotation marks omitted.) *Grant* v. *Commissioner of Correction*, 121 Conn. App. 295, 298, 995 A.2d 641, cert. denied, 297 Conn. 920, 996 A.2d 1192 (2010).

The petitioner argues, and the respondent concedes, that a reasonable jurist could conclude that the petitioner presented enough evidence to survive a dismissal

of his claim that Imhoff rendered ineffective assistance when conveying the pretrial plea offer.[9] For the reasons that follow, we agree with the parties that the habeas court abused its discretion in denying certification to appeal.

The legal principles governing a trial court's decision to dismiss a claim for failure to present a prima facie case pursuant to Practice Book § 15-8 are well settled. "A prima facie case, in the sense in which that term is relevant to this case, is one sufficient to raise an issue to go to the trier of fact. . . . In order to establish a prima facie case, the proponent must submit evidence which, if credited, is sufficient to establish the fact or facts which it is adduced to prove. . . . In evaluating the [granting of] a motion to dismiss, [t]he evidence offered by the plaintiff is to be taken as true and interpreted in the light most favorable to [the plaintiff], and every reasonable inference is to be drawn in [the plaintiff's] favor." (Internal quotation marks omitted.) *Winn* v. *Posades*, 281 Conn. 50, 54–55, 913 A.2d 407 (2007); see also *Lapointe* v. *Commissioner of Correction*, 113 Conn. App. 378, 388, 966 A.2d 780 (2009). "Whether the plaintiff has established a prima facie case entitling the plaintiff to submit a claim to a trier of fact is a question of law over which [this court's] review is plenary." (Internal quotation marks omitted.) *Winn* v. *Posades*, supra, 55.

The habeas court relied on the United States Supreme Court decision in *Missouri* v. *Frye*, supra, 132 S. Ct. 1399, to dismiss the petitioner's claim that Imhoff rendered ineffective assistance when conveying the pretrial plea offer. Specifically, the habeas court interpreted *Frye* to require the presentation of direct evidence "that the trial court would have accepted [the terms of the] plea had it been brought to the court . . . ." *Frye* and its companion case, *Lafler* v. *Cooper*, U.S. , 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012), held that habeas petitioners can establish a violation of their sixth amendment right to counsel by proving that there is "a reasonable probability [that] they would have accepted the . . . plea offer had they been afforded effective assistance of counsel." *Missouri* v. *Frye*, supra, 1409; see also *Lafler* v. *Cooper*, supra, 1384 ("[i]n the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice").

The petitioner in *Lafler* was similarly situated to the petitioner here. He claimed that due to the inadequate advice of counsel, he rejected a plea offer, went to trial and that his sentence, imposed after conviction, was more severe than the rejected plea offer. *Lafler* v. *Cooper*, supra, 132 S. Ct. 1383. In *Lafler*, the Supreme Court held that in those circumstances, in order to satisfy the *Strickland* prejudice prong, a petitioner "must show that but for the ineffective advice of counsel there is a

reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." (Emphasis in original.) Id., 1385.

In *Frye*, the United States Supreme Court elaborated on how prejudice could be established from an objective standpoint without placing an extreme burden upon the courts and litigants to routinely call judges and prosecutors to the witness stand. Under *Frye*, the test for whether a trial court would have accepted the terms of a plea agreement is an objective test that does not require direct evidence as to what an individual trial judge would have done in a given case. Rather, this determination of prejudice must be made by assessing whether a "reasonable trial judge would have accepted the sentence . . . ." *Ebron* v. *Commissioner of Correction*, 307 Conn. 342, 360, 53 A.3d 983 (2012), cert. denied sub nom. *Arnone* v. *Ebron*, U.S. , 133 S. Ct. 1726, 185 L. Ed. 2d 802 (2013). In *Frye*, the court stated: "It can be assumed that in most jurisdictions prosecutors and judges are familiar with the boundaries of acceptable plea bargains and sentences. So in most instances it should not be difficult to make an objective assessment as to whether or not a particular fact or intervening circumstance would suffice, in the normal course, to cause prosecutorial withdrawal or judicial nonapproval of a plea bargain. The determination that there is or is not a reasonable probability that the outcome of the proceeding would have been different absent counsel's errors can be conducted within that framework." *Missouri* v. *Frye*, supra, 132 S. Ct. 1410.

The habeas court in the present case analyzed the petition in accordance with its interpretation of *Frye* and *Lafler*. It does not appear that the court relied on the recent decision of our Supreme Court in *Ebron* v. *Commissioner of Correction*, supra, 307 Conn. 342, which was released prior to the time that the court rendered its decision and is directly applicable to the present case.

*Ebron* analyzed the impact of both *Frye* and *Lafler* on habeas claims concerning ineffective assistance of counsel related to advice concerning plea offers. In *Ebron*, the court stated: "[W]e must address what appears to be a possible tension between *Frye* and *Lafler*. Specifically, under *Frye*, the habeas court is required to consider information that would have come to the trial court's attention after the defendant would have accepted the plea offer but before he would have been sentenced in determining whether the petitioner was prejudiced by the deficient performance of counsel.

. . . The court in *Lafler*, however, declined to rule out the possibility that a habeas court may be permitted to consider such information when exercising its discretion in crafting a remedy. . . . If the habeas court already has determined, however, that the petitioner was prejudiced because it is reasonably probable that the trial court would have imposed the sentence embodied in the plea offer even in light of an intervening circumstance, such as the court's review of a [presentence investigation] report or a victim impact statement, it is difficult to understand why the court should be permitted to consider such a circumstance again when it exercises its discretion to determine whether the imposition of that sentence is the appropriate remedy. . . . Accordingly, in order to avoid potentially conflicting findings at the prejudice and remedy stages of a habeas proceeding in a lapsed plea case, we conclude that, to establish prejudice, a petitioner need establish only that (1) it is reasonably probable that, if not for counsel's deficient performance, the petitioner would have accepted the plea offer, and (2) the trial judge would have conditionally accepted the plea agreement if it had been presented to the court." (Citations omitted; emphasis omitted; footnotes omitted.) Id., 354–58. A conditional acceptance of a plea occurs prior to the sentencing hearing. See *State* v. *Thomas*, 296 Conn. 375, 389, 995 A.2d 65 (2010) (trial court's acceptance of plea agreement necessarily contingent upon results of presentence investigation report); Practice Book § 43-10 ("[b]efore imposing a sentence . . . [1] [t]he judicial authority shall afford the parties an opportunity to be heard and, in its discretion, to present evidence on any matter relevant to the disposition, and to explain or controvert the presentence investigation report . . . or any other document relied upon by the judicial authority in imposing sentence," and [2] consider statements of victim and [3] defendant). The Supreme Court in *Ebron* noted that a trial court lacks the authority to unconditionally accept a guilty plea prior to considering the results of a pending presentence investigation report and indicated that in most cases, when a habeas court finds prejudice under the standard previously set forth, "that court should order the trial court to determine the proper remedy in light of any information concerning the crime or the petitioner that would have come to light between the acceptance of the plea offer and the imposition of the sentence . . . ." *Ebron* v. *Commissioner of Correction*, supra, 307 Conn. 358. The court in *Ebron* adopted this bifurcated procedure to provide "greater protections to habeas petitioners who have received ineffective assistance of counsel during the plea agreement process than those contemplated in *Lafler*." Id., 355 n.7. This standard, providing greater protection to the petitioner, governs.

Although in this case no direct evidence was presented from a judge, prosecutor, or defense counsel as

to what the trial court would have done if it had been presented with a five year plea agreement, viewing the evidence in the light most favorable to the petitioner, a reasonable jurist could have concluded that the petitioner presented sufficient circumstantial evidence, through his testimony and exhibits, to survive dismissal.[10] Viewing the petitioner's testimony as truthful and drawing "every reasonable inference . . . in [his] favor"; (internal quotation marks omitted) *Winn* v. *Posades*, supra, 281 Conn. 55; a reasonable jurist could have concluded that the petitioner had satisfied *Strickland*'s prejudice prong because he demonstrated that it was reasonably probable that, if not for counsel's deficient performance, he would have accepted the plea offer, and that the trial judge would have conditionally accepted the plea agreement if it had been presented to the court. Specifically, viewing all of the petitioner's testimony as true, a reasonable jurist could have found that Imhoff had incorrectly advised the petitioner right up until the first day of jury selection, that Imhoff failed to advise the petitioner of the maximum penalty for the charged offense, and that Imhoff misled the petitioner to believe that he would not risk exposure to any additional prison time should he take the case to trial and lose. A reasonable jurist, viewing the evidence in the light most favorable to the petitioner, could have found that but for the ineffective advice of counsel, there was a reasonable probability that a reasonable trial court, presented with the plea agreement requiring the petitioner to serve five years in prison, would have conditionally accepted it. As the discrepancy between the five year plea offer and the petitioner's ultimate sentence after being convicted at trial was only three years of incarceration, a reasonable jurist, viewing the evidence in the light most favorable to the petitioner, could infer that the plea offer was not unduly lenient in light of the petitioner's conduct and, therefore, that a trial court would have conditionally accepted the terms of the plea agreement.[11] We note that, under *Ebron*, whether a presentence investigation report, a victim impact statement, or some other intervening occurrence prior to sentencing but subsequent to the conditional acceptance of the plea might have impacted on the ultimate sentence are factors that "should be considered at the remedy stage, not when the habeas court is determining whether there was prejudice." *Ebron* v. *Commissioner of Correction*, supra, 307 Conn. 360.

We conclude that the petitioner has demonstrated that whether he presented sufficient evidence to establish a prima facie case for ineffective assistance of counsel on the basis of improper advice as to whether to accept or reject a plea offer is debatable among jurists of reason, that a court could resolve the issue differently, or that the question raised deserves encouragement to proceed further. *Lozada* v. *Deeds*, supra, 498 U.S. 431–32; *Simms* v. *Warden*, supra, 230 Conn. 616.

Consequently, we conclude that the court abused its discretion in denying the petition for certification to appeal on the basis of the claimed improper dismissal of the petition.

Because a certifiable issue exists, we now turn to the merits of the petitioner's claim that the habeas court erroneously dismissed his petition for failure to make out a prima facie case. In reviewing the petitioner's testimony and other evidence in the light most favorable to him, the petitioner established a prima facie case for both deficient performance and resulting prejudice under *Strickland*. "To establish *Strickland* prejudice a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. . . . In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." (Citation omitted; internal quotation marks omitted.) *Lafler* v. *Cooper*, supra, 132 S. Ct. 1384.

The petitioner's testimony, which must be accepted as true in ruling on the motion to dismiss, revealed possible deficiencies with respect to Imhoff's advice regarding the plea offer. The facts and circumstances surrounding the petitioner's rejection of the plea offer, as explained by him, demonstrate that an inadequate level of information and advice was provided to him by Imhoff on the issue of acceptance or rejection of the plea. In addition, the transcripts of the petitioner's criminal jury trial proceedings and this court's decision in his direct appeal establish that the state had a strong case against the petitioner, and thus, Imhoff should have been strongly encouraging him to accept the plea offer. The petitioner established a prima facie case that he had not been advised by counsel of the maximum penalty for the charged offense until the date of trial, and that at that point the plea offer was off the table and no longer available. He established a prima facie case that he would have accepted a five year plea offer had he been properly advised by his trial counsel and that the trial judge would have conditionally accepted the resulting agreement had it been presented to the judge. In sum, the petitioner presented a prima facie case, considering both his direct and circumstantial evidence in the light most favorable to him, that there was a reasonable probability that the plea agreement would have been conditionally accepted by the trial court had he been properly advised by counsel during the plea process, and that the agreement's terms would have been less severe than the judgment and sentence that were in fact imposed by the court after trial.

The habeas court erred in granting the midtrial dismissal. Although the habeas court might have been free, at the conclusion of the trial, to reject the petitioner's ineffectiveness claim and deny it on the merits, the

court should have allowed the case to proceed to a full conclusion.

We now address the proper remedy on appeal, an issue on which the petitioner and the respondent disagree. The petitioner asserts that this court, having found the dismissal inappropriate, should proceed to evaluate only the evidence he presented in the truncated habeas trial, fully credit his testimony and exhibits on the basis of our review of the cold record, and conclude that he proved trial counsel's ineffective assistance due to counsel's failure to advise the petitioner properly as to the plea offer and the ramifications of rejecting that offer and going to trial.[12] The petitioner maintains that, pursuant to *Ebron*, should we determine that he proved that his trial counsel was ineffective, the appropriate remedy is to remand the case to the habeas trial court with orders to grant the petition and then to remand the case back to the trial court to exercise its discretion to "place the habeas petitioner, as nearly as possible, in the position that he would have been in if there had been no violation of his right to counsel," which could involve resentencing the petitioner, vacating the conviction and resentencing the petitioner pursuant to the plea agreement or leaving the conviction and sentence from the trial undisturbed. (Internal quotation marks omitted.)[13] *H. P. T.* v. *Commissioner of Correction*, 310 Conn. 606, 615, 79 A.3d 54 (2013). The respondent argues that we should remand the case for a new habeas trial. We agree with the respondent.

It is axiomatic that "[a]ppellate courts never act as finders of fact." *Gould* v. *Commissioner of Correction*, 301 Conn. 544, 566, 22 A.3d 1196 (2011). "[A]n appellate court cannot find facts or draw conclusions from primary facts found, but may only *review* such findings as to see whether they might be legally, logically and reasonably found." (Emphasis in original; internal quotation marks omitted.) *Holley* v. *Commissioner of Correction*, 62 Conn. App. 170, 180, 774 A.2d 148 (2001). In this case, because the habeas court prematurely and succinctly concluded the trial by dismissing the petitioner's claim for a lack of evidence on the *Strickland* prejudice prong, other than the court's conclusion that the petitioner failed to "demonstrate that there's a reasonable probability that the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it," the record is devoid of any other factual findings or other relevant legal determinations for this court to review.[14] "Whether the [petitioner] can sustain his burden past this [early] stage of the proceedings is an entirely different matter and not a question this court needs to answer to resolve this appeal." *Sullivan* v. *Thorndike*, 104 Conn. App. 297, 305, 934 A.2d 827 (2007), cert. denied, 285 Conn. 907, 908, 942 A.2d 415, 416 (2008). At the time a court is considering a motion for dismissal for failure to make out a prima facie case, a petitioner is not required to

overcome any of the respondent's defenses. Although a determination of the truthfulness of a statement is a question of fact for the trier, a trial court would act "improperly [if] it made findings of fact at this stage instead of taking the plaintiff's evidence . . . as true." *Gambardella* v. *Apple Health Care, Inc.*, 86 Conn. App. 842, 851 n.6, 863 A.2d 735 (2005). We can only speculate as to what the habeas court's factual findings and legal conclusions would have been had it not been required to review the petitioner's case in the light most favorable to him.[15] In addition, the cessation of the trial prevented the respondent from presenting his case.[16]

A trial court's normal assessment of a case prior to rendering its decision is never based on a view of the plaintiff's evidence in only the most favorable light, but rather, is based on a review of all the evidence introduced by each party. In conducting such review, the trial court determines what weight to give specific items of evidence, including deciding which testimony to believe and which testimony not to believe. The basis for a court's dismissal of a case under Practice Book § 15-8 can never be presumed equivalent to the result that would be achieved after a consideration of a case fully tried on its merits. Thus, it has been uniformly determined that when an appellate court determines that a trial court improperly granted a motion for dismissal pursuant to Practice Book § 15-8, the appropriate remedy is to remand the case for a new trial. *Thomas* v. *West Haven*, 249 Conn. 385, 387, 734 A.2d 535 (1999) (trial court improperly dismissed plaintiff's case for failing to make out prima facie case and remanded for new trial), cert. denied, 528 U.S. 1187, 120 S. Ct. 1239, 146 L. Ed. 2d 99 (2000); *Lapointe* v. *Commissioner of Correction*, supra, 113 Conn. App. 404 (habeas case remanded to habeas court for further proceedings after reversal, in part, of judgment of dismissal under Practice Book § 15-8); *F.E. Crandall Disposal, Inc.* v. *Ledyard*, 141 Conn. App. 442, 455, 62 A.3d 544 (2003) (judgment of dismissal for failure to make out prima facie case of fraud reversed and case remanded for new trial).

The judgment is reversed and the case is remanded for a new trial solely on the petitioner's claim, set forth in his amended petition, that his trial counsel rendered ineffective assistance by failing to advise him adequately with regard to the state's pretrial plea offer.

In this opinion the other judges concurred.

[1] Practice Book § 15-8 provides in relevant part: "If, on the trial of any issue of fact in a civil matter tried to the court, the plaintiff has produced evidence and rested, a defendant may move for judgment of dismissal, and the judicial authority may grant such motion if the plaintiff has failed to make out a prima facie case . . . ."

[2] This court's opinion in the petitioner's direct appeal provides a full description of the facts that the jury reasonably could have found at trial. See *State* v. *McMillion*, 128 Conn. App. 836, 17 A.3d 1165, cert. denied, 302 Conn. 903, 23 A.3d 1243 (2011).

[3] The petitioner filed a subsequent habeas petition on October 21, 2011,

arising from the same underlying criminal trial. That petition involved a claim of ineffective assistance of appellate counsel on direct appeal. On April 13, 2012, the habeas court, *Solomon, J.*, granted the petitioner's motion to consolidate the two petitions under one controlling docket number. On May 3, 2012, the petitioner filed the operative second amended petition, which incorporated the ineffective assistance of appellate counsel claim in the second count. The habeas court dismissed the second count on November 6, 2012. That dismissal is not a subject of this appeal.

[4] During cross-examination of the petitioner, the respondent suggested that the state's file contained information that the pretrial plea offer was actually offered by the trial court, and that the terms of that offer encompassed a ten year prison sentence, suspended after service of five years, followed by a period of probation. The petitioner, however, denied any recollection that the plea offer included a split sentence. Although the respondent's question is not evidence, it nevertheless suggests that had the habeas trial not ended with a judgment of dismissal, the respondent might have presented testimony that the terms of the plea offer differed from the petitioner's recollection and that a trial judge was willing to accept a plea agreement that contemplated five years incarceration. In the statement of issues in his brief to this court, the petitioner claimed ineffective assistance of counsel regarding advice as to "the state's (and/or the court's) plea offer . . . ."

[5] Although the record does not reveal what charge or charges the purported plea offer encompassed, the petitioner was originally charged, tried, and convicted on a sole count of assault in the first degree pursuant to § 53a-59 (a) (1).

General Statutes § 53a-59 (b) provides in relevant part: "Assault in the first degree is a class B felony provided . . . any person found guilty under subdivision (1) of subsection (a) shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court . . . ."

[6] Initially, the respondent moved to dismiss at the close of the petitioner's case. When the habeas court questioned the appropriate characterization of his motion, however, the respondent offered it as a motion for a directed verdict. We agree with both the respondent and the petitioner that because habeas trials are civil actions and are tried to the court and not a jury, it is more appropriate to move to dismiss pursuant to Practice Book § 15-8 at the close of a petitioner's case. See *Grant* v. *Commissioner of Correction*, 121 Conn. App. 295, 299, n.2, 995 A.2d 641 (as habeas trial is without jury, motion for directed verdict would be more accurately presented as motion for dismissal for failure to make out prima facie case under Practice Book § 15-8), cert. denied, 297 Conn. 920, 996 A.2d 1192 (2010); see also *Young* v. *Bridgeport*, 135 Conn. App. 699, 705 n.7, 42 A.3d 514 (2012) (treating motion for directed verdict in accordance with substance as opposed to label and noting challenge to prima facie case properly raised as motion to dismiss pursuant to Practice Book § 15-8).

In addition, Practice Book § 23-29 provides in relevant part: "The judicial authority may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof, if it determines that . . .

"(5) any other legally sufficient ground for dismissal of the petition exists."

[7] See footnote 6 of this opinion.

[8] The habeas court also "directed [a] verdict" with regard to the petitioner's other allegations of trial counsel's ineffectiveness, agreeing with the respondent that the petitioner had failed to meet his burden of establishing that additional witnesses or investigation would have benefited the defense at trial. The petitioner has not challenged the habeas court's ruling as to these other allegations of ineffectiveness and, therefore, the resolution of these grounds is not at issue in this appeal. See *Sotomayor* v. *Commissioner of Correction*, 135 Conn. App. 15, 18 n.1, 41 A.3d 333, cert. denied, 305 Conn. 903, 43 A.3d 661 (2012).

[9] The respondent, however, does not concede that the evidence presented by the petitioner would require a habeas court, sitting as the ultimate fact finder, to grant the petitioner habeas relief. The respondent's concession in this appeal has no bearing on the habeas court's subsequent analysis of either deficient performance or prejudice upon retrial.

[10] There is no legal distinction between the probative value of direct versus circumstantial evidence, and a petitioner can rely on either to prove his case. *Greene* v. *Commissioner of Correction*, 123 Conn. App. 121, 132–33, 2 A.3d 29, cert. denied, 298 Conn. 929, 5 A.3d 489 (2010), cert. denied sub

nom. *Greene* v. *Arnone*,     U.S.     , 131 S. Ct. 2925, 179 L. Ed. 2d 1248 (2011).

[11] As noted previously, there was a suggestion by the respondent, during the cross-examination of the petitioner, that a trial judge had offered a plea arrangement that required the petitioner to serve ten years, suspended after five years of incarceration. See footnote 4 of this opinion.

[12] The petitioner's third issue on appeal is, "Did the habeas court err when it failed to find that the petitioner's trial counsel was ineffective when he failed to correctly, meaningfully, properly, adequately, timely and effectively advise the petitioner as to the state's [and/or the court's plea offer] and the ramifications of rejecting that offer and going to trial?" We do not resolve this issue on its merits because, as fully discussed in this opinion, the proper remedy in this case is to remand the case for a new habeas trial.

[13] The petitioner argues, without citation to any authority, that because the habeas court made no mention of its assessment of his credibility, it should be assumed that the court found him credible. This argument is not persuasive in light of the specific requirement that a court, in ruling on a motion to dismiss for failure to make out a prima facie case, *must* accept the petitioner's testimony, as well as his other evidence, as true, and is required to draw every reasonable inference in the petitioner's favor. See *Gambardella* v. *Apple Health Care, Inc.*, 86 Conn. App. 842, 846, 863 A.2d 735 (2005). The petitioner also contends, again without citation to legal authority, that a remand for a new habeas trial is prejudicial to him because the respondent had a preview of his case during the initial hearing and, as a result, the respondent will now be better prepared to defend his petition. This is true of every case on appeal that is remanded for a new trial. It could just as easily be said that the respondent is now prejudiced because the petitioner has a second opportunity to present his case and to refine and improve its presentation. In addition, as previously noted, in the proceedings on remand, the court is bound to apply the *Ebron* standard to the petitioner's ineffective assistance of counsel claim.

[14] Although we agree with the petitioner that no law requires a habeas court to definitively articulate whether a petitioner's or other witness' testimony is credible or incredible, such findings are often integral to habeas trial courts' decisions.

[15] For example, portions of the petitioner's testimony might possibly raise questions as to his credibility: his stated inability to recall events due to a medical condition, his professed lack of understanding of the plea bargaining process despite numerous prior convictions, and his admission that although he was unhappy with trial counsel's advice on the purported five plea year offer and requested new counsel prior to the commencement of his jury trial, he never complained to the trial court that the plea offer had not been adequately explained to him.

[16] Practice Book § 15-8 also provides that "[t]he defendant may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made." The rule does not contemplate that the making of such a motion bars the moving party from ever presenting a defense.

———————————————